CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

June 29, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **JAMES CALVIN ROBERTSON,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:24-cv-00726** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **CARLOS R. IBANEZ, DDS, <u>et</u> <u>al.</u>,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

James Calvin Robertson, an inmate proceeding <u>pro se</u>, filed this civil action under 42 U.S.C. § 1983 against three defendants, including Carlos R. Ibanez, DDS, an oral surgeon in Charlottesville, Virginia. The case is presently before the court on Dr. Ibanez's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 30. For the reasons set forth below, the motion to dismiss is **GRANTED**.

## I.    Background

The following factual allegations relevant to the pending motion are taken from the amended complaint and additional written materials filed by Robertson. <u>See</u> <u>Holley v. Combs</u>, 134 F.4th 142, 144 (4th Cir. 2025) ("[I]n order to determine whether the claim of a <u>pro se</u> plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.") (quoting <u>Garrett v. Elko</u>, No. 95-7939, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997)). The factual allegations are accepted as true for purposes of the motion to dismiss.

On the morning of September 16, 2019, two inmates physically assaulted Robertson in a cell at Augusta Correctional Center. Am. Compl., ECF No. 16, at 3. One of the inmates punched Robertson in the face and injured his jaw. <u>Id.</u> Later that night, Robertson was

transported to a local hospital, where x-rays and an MRI revealed that Robertson had sustained a mandible facture. Id.

On September 17, 2019, Robertson saw Dr. Ibanez at Charlottesville Oral Surgery and Dental Implant Center. Id. at 4; Pl.'s Add'l Evid., ECF No. 3, at 1. Dr. Ibanez determined that Robertson's jaw would need to be wired shut, but he did not perform the procedure that same day or take any other steps to "stabilize the facture." Pl.'s Add'l Evid. at 1. Instead, Dr. Ibanez prescribed a variety of medications, including acetaminophen for pain. Pl.'s Add'l Evid. at. 1.

On September 23, 2019, Robertson returned to Dr. Ibanez's office to have his jaw wired shut for 30 days. Id. Prior to the expiration of the 30-day period, "the wires came loose and fell out." Id. When Robertson saw Dr. Ibanez again on October 29, 2019, he heard Dr. Ibanez say that the wires must not have been hooked properly. Id. Dr. Ibanez advised Robertson that he would need to either undergo surgery or have his jaw wired shut again. Id. at 2. Robertson elected to undergo surgery. Id. However, the surgery was not performed on that date, and Robertson alleges that Dr. Ibanez did nothing else to stabilize his jaw at that time. Id.

On November 11, 2019, Robertson returned to the hospital for Dr. Ibanez to perform surgery. Id. The procedure included the installation of a plate and four screws. Id. Dr. Ibanez did not see Robertson again following the surgery. Id.

After returning to Augusta Correctional Center, Robertson began experiencing headaches, and he complained about his teeth overlapping and preventing him from chewing on his left side. Id. On November 19, 2019, a prison staff member contacted Dr. Ibanez regarding a follow-up appointment. Id. Rather than agreeing to see Robertson again, Dr.

Ibanez "told the medical staff at Augusta Correctional Center to put [Robertson] on a soft diet for 3 more weeks." Id.

Between November 19, 2019, and November 1, 2021, Robertson submitted complaints and grievances regarding the issues he continued to experience after undergoing surgery. Id. Robertson complained of pain and numbness and reported that his jaw was "still not lined up" and that his teeth were "overlapped even more." Id. Although Robertson saw a nurse and received additional pain medication during that period, he had "no follow up with Dr. Ibanez." Id.

On September 25, 2022, Robertson submitted a medical request form alleging that he was still experiencing jaw pain. Id. at 3. On October 13, 2022, Robertson saw a medical doctor at VCU Health in Richmond, Virginia, and they discussed removing the hardware installed by Dr. Ibanez "due to the possibility of hardware failure" being the cause of the pain that Robertson had experienced since undergoing surgery. Id. However, a radiology specialist advised Robertson that removing the hardware would "not guarantee elimination of pain." Id.

On January 25, 2023, Robertson submitted a request for dentures after deciding that he did not want to "go through with surgery to have [the] hardware removed," since it would require "clean[ing] the bone" and installing new hardware. Id. at 3–4. Although prison medical staff subsequently advised Robertson that he had been scheduled for a dental appointment, he had still not seen a dentist as of October 20, 2024. Id. at 4.

## II.    Procedural History

In February 2022, Robertson filed a civil action under 42 U.S.C. § 1983, alleging that two medical providers at Augusta Correctional Center provided inadequate medical care for the pain and migraines resulting from his jaw being improperly set by Dr. Ibanez. See

Robertson v. Dameron, No. 7:22-cv-00086 (W.D. Va.), Compl., ECF No. 1, at 2. Although

Dr. Ibanez was mentioned in the facts section of the complaint, Robertson did not name him

as a defendant or seek to have Dr. Ibanez served with process. The medical providers named

as defendants moved for judgment on the pleadings, and a United States Magistrate Judge, to

whom the parties consented to the exercise of jurisdiction, granted that motion on September

25, 2024, and dismissed the case. See Robertson v. Dameron, No. 7:22-cv-00086 (W.D. Va.),

Order, ECF No. 45.

In October 2024, Robertson filed this action under 42 U.S.C.§ 1983 against Dr. Ibanez

and other defendants. After paying the full filing fee, Robertson filed an amended complaint

on July 17, 2025. ECF No. 16.

Dr. Ibanez has moved to dismiss the amended complaint under Federal Rule of Civil

Procedure 12(b)(6) on the basis that any claim against him is barred by the applicable statute

of limitations. ECF No. 30. Robertson has opposed the motion, ECF Nos. 36 and 46, and the

matter is ripe for review.

## II.   Standard of Review

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal for failure to state

a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when

the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Id.

4

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "[D]istrict courts are not the legal advocates of pro se litigants," Jackson v. Dameron, 171 F.4th 641, 650 (4th Cir. 2026), and a complaint filed without counsel "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

Although a motion to dismiss under Rule 12(b)(6) "invites an inquiry into the legal sufficiency of the complaint" rather than "an analysis of potential defenses," Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996), an affirmative defense like the statute of limitations may be addressed through a motion to dismiss where the facts sufficient to rule on the affirmative defense have been alleged by the plaintiff. Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). In other words, where the facts necessary to rule on an affirmative defense clearly appear on the face of the plaintiff's pleadings, the court may reach the defense. Id.

## III.   Discussion

Robertson filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Robertson claims that Dr. Ibanez acted with deliberate indifference to his

5

serious medical needs in violation of the Eighth Amendment by failing to adequately treat his jaw fracture. See Pl.'s 1st Resp. to Def.'s Mot. to Dismiss, ECF No. 36, at 2–4; Pl's 2d Resp. to Def.'s Mot. to Dismiss, ECF No. 46, at 3–4.

In cases brought under § 1983, courts "apply the statute of limitations for personal injuries of the state in which the alleged violations occurred." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). "A plaintiff in Virginia generally must bring a personal injury action within two years of the date that the cause of action accrues." Id. (citing Va. Code § 8.01-243(A)). And a claim under § 1983 "ordinarily accrues when a plaintiff becomes aware or has reason to know of the harm inflicted." Id. Thus, the clock typically "starts running when the plaintiff first knew or should have known of his injury, whether or not he realized the cause of his injury was unlawful." Almond v. Unified Sch. Dist. #501, 665 F.3d 1174, 1176 (10th Cir. 2011); see also TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999) ("Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.").

Here, Robertson alleges that Dr. Ibanez improperly treated his fractured jaw and that the surgical procedure performed by Dr. Ibanez on November 11, 2019, resulted in chronic pain and numbness and caused his jaw to be misaligned and his teeth to overlap. Robertson acknowledges that he filed multiple complaints regarding these precise issues between November 19, 2019, and November 1, 2021. Pl.'s Add'l Evid. at 2; see also Pl.'s 2d Resp. to Def.'s Mot. Dismiss at 2–3 ("Between November 19, 2019 to November 1, 2021, showed many dates of complaints, proving that the plate and screws were improperly installed causing . . . misalignment of the jaw and additionally causing the teeth to overlap [and] causing severe headaches and migraines"). Thus, it is clear from Robertson's allegations that he knew or had

6

reason to know of the harm allegedly inflicted by Dr. Ibanez more than two years before he filed this action in October 2024.

In response to Dr. Ibanez's motion to dismiss, Robertson argues that the "continuing violation" doctrine saves his claims against Dr. Ibanez because he has still not received adequate treatment for his jaw issues. See Pl.'s 1st Resp. to Def.'s Mot. to Dismiss at 4–5. To establish a continuing violation, however, a plaintiff must identify a series of unlawful acts or omissions that demonstrate deliberate indifference by a defendant and "place one or more of these acts or omissions within the applicable statute of limitations for personal injury." DePaola, 884 F.3d at 487. In other words, a plaintiff must allege that "the defendant['s] acts of deliberate indifference continued within the two years prior to the filing of his complaint." Id. at 488; see also Vasquez v. Davis, 882 F.3d 1270, 1277 (10th Cir. 2018) ("Said another way, the continuing violation doctrine . . . would apply here only when a particular defendant allegedly committed wrongful acts within, as well as outside, the limitations period."). The continuing violation doctrine "does not apply to claims that are based on discrete acts of unconstitutional conduct, or those that fail to identify acts or omissions within the statutory limitation period that are a component of the deliberate indifference claim." DePaola, 884 F.3d at 487. Additionally, "continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 248 (4th Cir. 2011).

Here, Robertson claims to suffer continuing ill effects from the treatment provided by Dr. Ibanez in 2019, nearly five years before he filed this action. Robertson has not plausibly alleged that Dr. Ibanez continued to engage in unlawful conduct "within the two years prior to the filing of his complaint." DePaola, 884 F.3d at 487. Instead, all of the challenged actions

and decisions by Dr. Ibanez occurred well outside the limitations period. Robertson's submissions indicate that he last saw Dr. Ibanez on November 11, 2019, when he underwent surgery, and that prison medical staff last communicated with Dr. Ibanez regarding a possible follow-up appointment eight days later, when Dr. Ibanez instructed the medical staff to place Robertson on a soft diet. There is no indication that Dr. Ibanez was personally aware of any serious medical need that remained unresolved within the relevant statutory period, much less that Dr. Ibanez continued to deny Robertson treatment. See id. at 488. The mere fact that Robertson continued to experience pain and other jaw-related issues during the limitations period is insufficient to invoke the continuing violation doctrine. See, e.g., Thompson v. Kandulski, No. 25-1814, 2026 U.S. App. LEXIS 17258, at *5 (6th Cir. June 12, 2026) ("Here, Thompson claims continual ill effects from past wrongful conduct, not continuing wrongful conduct. The wrongful actions alleged in the complaint all took place outside the limitations period, and the fact that his medical condition, which the defendants allegedly failed to properly treat, worsened throughout the limitations period does not make his claims timely."); Vasquez, 882 F.3d at 1277 (concluding that the continuing violation doctrine did not save an inmate's Eighth Amendment claims of deliberate indifference against four defendants who had no interactions with the inmate within the two-year period preceding the filing of the underlying action).

Robertson has not identified any basis for statutory or equitable tolling of the applicable limitations period. Although Robertson has not raised the issue, the court notes that the filing of the previous action in 2022 did not operate to toll the statute of limitations applicable to his claims against Dr. Ibanez pursuant to Virginia Code § 8.01-229(E)(1), since Dr. Ibanez was not named as a defendant in that action. See Casey v. Merck & Co., 283 Va. 411, 418, 722

S.E.2d 842, 846 (Va. 2012) ("For the filing of an action to toll the statute of limitations from running on a subsequently filed action pursuant to Code § 8.01-229(E)(1), there must be identity of the parties in the two lawsuits."). Additionally, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

For these reasons, the court concludes that Robertson's Eighth Amendment claims of deliberate indifference under § 1983 against Dr. Ibanez are barred by the applicable two-year statute of limitations. Accordingly, the court will grant Dr. Ibanez's motion to dismiss.

## IV.    Conclusion

For the reasons stated, the motion to dismiss filed by Dr. Ibanez is **GRANTED**. An appropriate order will be entered.

Entered: June 29, 2026

Michael F.
Urbanski
U.S. District Judge
2026.06.29
11:38:32 -04'00'

Michael F. Urbanski
Senior United States District Judge

9